**Jack Burton TUNNELL, Appellant,**

**v.**

**Doris WILEY and Richard Sprague, First Asst. District Attorney, Appellees.**

**No. 74–1245.**

United States Court of Appeals, Third Circuit.

Argued Oct. 7, 1974.

Decided April 1, 1975.

Sherrie E. Raiken, Philadelphia, Pa., for appellant.

Mark Sendrow, Asst. Dist. Atty., Asst. Chief, Appeals Div., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, F. Emmett Fitzpatrick, Jr., Dist. Atty., Philadelphia, Pa., for appellee Richard A. Sprague.

Before BIGGS, ADAMS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

Petitioner Tunnell's complaint, brought under 42 U.S.C. § 1983, seeks $600,000.00 in damages against the defendants. He alleges: (1) that he was denied access to the courts; (2) that he

was denied the right to bail; and (3) that he was deprived of a fair trial. As to his first claim (denial of access to the courts), the district court granted defendants' motions to dismiss. As to Tunnell's remaining claims, the district court granted defendants' motions for summary judgment. Tunnell v. Wiley, 369 F.Supp. 1260 (E.D.Pa.1974). This appeal followed. We affirm.

## I.

The facts which led to the filing of Tunnell's complaint began with his conviction and imprisonment on November 22, 1968, for a homicide in Philadelphia. Prior to the completion of his sentence, Tunnell was permitted to leave prison on a pre-release program. While on release from prison he was charged with attacking two teenagers in West Philadelphia and was arrested on December 30, 1971. On March 19, 1972, the Philadelphia Bulletin published an article which forms the basis of petitioner's present § 1983 claim of denial of due process. Published under defendant Wiley's by-line, the article read, in relevant part:

OFFICIALS CITE EARLY RELEASE IN PAROLEE'S ATTACK ON TWO YOUTHS

BY DORIS WILEY

\*　\*　\*　\*　\*　\*

'I burned them in the eyes so they couldn't tell the man who did this.'

\*　\*　\*　\*　\*　\*

The crime was called 'one of the most atrocious in the crime annals of the city by First Assistant District Attorney Richard A. Sprague.

\*　\*　\*　\*　\*　\*

The balance of the article was devoted to a graphic description of the alleged criminal assault, a summary of Tunnell's prior criminal record, and a reference to Tunnell's wife and family. It concluded with the following:

.　.　. But First Assistant District Attorney Sprague called it idiotic that Tunnell was released. Let the legisla-

tors who passed the law allowing this, explain it to that boy and girl, he said: 'It is outrageous. When is the public going to have enough of this? How many times must people be raped, maimed, murdered　.　.　.　before the public demands a halt to it?'

Thirteen months after the publication of this article, on May 4, 1973, Tunnell was tried and convicted in a Pennsylvania state court. An appeal from that conviction is currently pending in the Pennsylvania Superior Court.

It is the publication of the March 19, 1972, article in the Philadelphia Bulletin that forms the basis of Tunnell's § 1983 complaint.

## II.

A detailing of the procedural history of this case is essential to an understanding of the analysis underlying our affirmation of the district court's order of January 2, 1974.

Following his arrest (on December 30, 1971) and the publication of the Philadelphia Bulletin article (on March 19, 1972), Tunnell filed, on January 19, 1973, a rambling, eight page, single-spaced complaint naming Wiley and Sprague as defendants. Despite the court's subsequent appointment of counsel to represent him, Tunnell's verified, *pro se* complaint was never amended in any particular. The complaint recited that the publication of Sprague's statements violated Tunnell's constitutional rights in that:

.　.　. he is denied a fair trial, access to the courts [state criminal courts] for any pre-trial motions .　.　.. [T]hat after his arrest he could not get his Bail reduced. .　. That he has filed eight (8) Pre-trial Motions and has not been giving [sic] an oppinion [sic] on any　.　.　..

On February 2, 1973, the court entered an order appointing a student intern (and the intern's supervising attorneys) as counsel for Tunnell. Since that time, Tunnell has been represented at every stage of the proceeding.

On February 12, 1973, counsel for Sprague moved to dismiss the complaint under Fed.R.Civ.P. 12(b) and for Summary Judgment under Rule 56. On February 28, 1973, defendant Wiley moved to dismiss and to strike the complaint under Rules 8(a) and 10(b). In the interim, Tunnell was tried and convicted (May 1–4, 1973) in state court on the underlying criminal charges.

The transcript of the June 7th hearing on defendants' motions reveals the following colloquy between counsel for Sprague and the court:

> Counsel: "I should like to note that at the trial [Tunnell's criminal trial] there was no motion for change of venue made. The only thing that was done with respect to this pre-trial publicity is that individual voir dire of the jurors was requested.

> \* \* \* \* \* \*

> The Court: " . . . I am concerned about your statement has to become part of the record so that if there is an appeal we can get your statement as to what has or has not happened to Mr. Tunnell either in an affidavit or statement, and they [Tunnell] would have an opportunity to respond.

> Counsel: "Yes, I can submit an affidavit. . . ."

Accordingly, Sprague's counsel, on June 20, 1973, submitted the affidavit[1] of Robert Ginsburg, the prosecutor at Tunnell's criminal trial, which substantiated the representations of counsel made at the hearing on defendants' motions.

1. The "Ginsburg affidavit" stated in relevant part:

   The District Attorney's file indicates that at no time did the defense file a motion for change of venue, nor was there such an oral motion made at the trial. Defense counsel did request and was given the opportunity by the court to question prospective jurors individually with regard to their knowledge of the case through pre-trial publicity, and to challenge them on this basis; however, no juror was challenged on this basis, to the best recollection of Robert Ginsburg, the Assistant District Attorney at trial.

2. In the original Notice of Appeal, counsel for Tunnell indicated that he was appealing only

On January 2, 1974, the district court issued its opinion and order granting defendants' motions for summary judgment as to the bail and fair trial claims and dismissing the complaint with respect to the claim of denial of access to the courts. Tunnell's notice of appeal was timely filed on January 29, 1974.[2] On Tunnell's admission that the district court properly granted summary judgment in favor of Wiley, this Court on May 17, 1974, granted Tunnell's motion to dismiss his appeal as against Wiley.

### III.

We can readily dispose of two of the three claims asserted in Tunnell's complaint.

■ Tunnell's contention that he was denied access to the courts fails to allege any connection between that claimed "denial" and any conduct of defendant Sprague. Even when liberally read under the relaxed standards applicable to a *pro se* complaint (*see* Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)), Tunnell's allegations do not state a claim for relief as against the defendant Sprague. Thus, whatever difficulties, if any, Tunnell may have encountered in having motions heard prior to his criminal trial,[3] he did not allege, and indeed did not suggest that they were caused by this defendant. *See* Fletcher v. Hook, 446 F.2d 14 (3d Cir. 1971).

In addition to discussing Tunnell's "denial of access to the courts" claim, the district court also analyzed in detail Tun-

from the grant of defendants' "Motions to Dismiss." Nevertheless, the brief submitted on behalf of Tunnell included arguments directed at the bail and fair trial issues which had been the subject of the court's "Summary Judgment" disposition. When this discrepancy was called to plaintiff's attention by this Court, counsel moved to "Amend the Notice of Appeal *Nunc Pro Tunc.*" We hereby grant that motion and thus proceed to consider the present appeal on each of the issues identified, *supra*.

3. It appears that Tunnell was represented by counsel throughout the criminal proceedings in state court.

nell's claim that the publication of Sprague's comments, quoted *supra,* denied his right to have bail reduced. We agree with the well-reasoned analysis of the district court (369 F.Supp. at 1264–66), and see no reason to elaborate further on that discussion.

The order of the district court pertaining to the issues of denial of access to the courts and reduction of bail will be affirmed.

## IV.

The only contention raised by Tunnell which requires discussion by us is his claim that he was denied a fair trial by the pre-trial publication of Sprague's comments. Although we reach the same conclusion as the district court, and hence affirm its judgment, we do so under a somewhat different analysis.[4]

We start with an examination of the procedural context within which the "fair trial" issue is presented. Tunnell's entire "fair trial" claim is contained in seven (7) words found in the preamble to his complaint (" . . . That he is denied a fair trial . . .."). The facts underlying this conclusory allegation are not specified in any other part of the complaint; nor, indeed, in any other pleading or documents subsequently filed by Tunnell.

At the time Sprague initially moved for dismissal and for summary judgment, he did not accompany his motion by the filing of an affidavit. The memorandum of law which was submitted in support of the motion could not have

suffced, in the absence of an affidavit or other appropriate sworn statement, to support the grant of a motion for summary judgment.[5] Hence, at that juncture, Tunnell's verified complaint, (conclusory as it was) would almost certainly have survived Sprague's motions.[6]

It is significant, however, that the district court did not act upon the defendants' motions at that stage. Prior to any disposition by the district court, four relevant events occurred. The first was Tunnell's criminal trial and conviction in May of 1973. The second was the June 20, 1973 hearing on defendants' motions. It was during that hearing that, for the first time, facts surfaced tending to dispute Tunnell's alleged denial of a fair trial. These appeared in the form of representations by Sprague's counsel that in the course of his criminal trial, Tunnell made no motion for change of venue and despite a voir dire of each juror, challenged no juror on the ground of exposure to prejudicial pre-trial publicity. At no time during the course of the hearing did Tunnell's counsel ever refute, explain, or even address these representations or their effect upon Tunnell's § 1983 cause of action.[7]

The third event occurred when Sprague's counsel submitted the affidavit requested by the court affirming, for the first time under oath, the same facts, pertaining to the treatment of the prejudicial publicity issue at Tunnell's criminal trial, as earlier represented at the hearing. The fourth "event" was Tun-

---

4. It is well established that we can affirm, if the result reached by a district court is correct, even though our reasoning is not consistent with that of the district court. *See United States v. One 1966 Volkswagen,* 490 F.2d 381 (3d Cir. 1973); *Vitex Manufacturing Co. v. Government of Virgin Islands,* 351 F.2d 313 (3d Cir. 1965).

5. A statement in a brief or in oral argument does not constitute evidence. *Thornton v. United States,* 493 F.2d 164, 167 (3d Cir. 1974), *see United States v. Bey,* 499 F.2d 194, 201 n. 19 (3d Cir. 1974).

6. For purposes of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the complaint is con-

strued in the light most favorable to plaintiff and its allegations are taken as true. *Curtis v. Everette,* 489 F.2d 516 (3d Cir. 1973); 5 Wright & Miller, Federal Practice and Procedure: Civil § 1357 (1969).

7. We do not suggest that any counter-representations, if made by Tunnell, would have sufficed to supply the required factual averments under oath. However, the complete absence of a response to these representations by Tunnell's counsel forecast Tunnell's subsequent failure to refute the June 20, 1973 affidavit that Sprague filed as a supplementary pleading.

nell's failure to respond to the affidavit submitted by Sprague.

Hence, at the time the district court ruled on defendants' motions, the record contained the following pleadings and documents in regard to the "fair trial" claim:

(1) A naked conclusory statement (albeit in a verified complaint) that plaintiff was denied a fair trial as the result of Sprague's statements published in the Philadelphia Bulletin; [8]

(2) An affidavit in support of defendants' motions for summary judgment indicating that Tunnell's counsel, at his criminal trial, did not seek a change of venue and did not despite a voir dire of each juror, challenge any jurors on the basis of the allegedly prejudicial article;

(3) No explanation, reply, or rejoinder, by affidavit or other sworn testimony, sufficient to prove the existence of a dispute as to a material fact, which would preclude the grant of summary judgment.

Tunnell's fair trial claim, which remained devoid of factual content or elaboration throughout the proceeding before the district court, left to Sprague's counsel and the district court the task of defining in what particular Tunnell was denied a fair trial. We cannot fault Sprague's counsel, in the absence of particularization by the plaintiff, for focusing upon the two means available to a defendant to avoid the effect of asserted prejudicial pre-trial publicity (a motion for change of venue and challenges to individual veniremen on *voir dire*). Having been left to infer by what means Tunnell was denied his right to a fair trial, we are satisfied that Sprague's affidavit (uncontradicted by the plaintiff) established the ultimate fact, in the context of a fair trial claim, that the allegedly prejudicial pre-trial publicity never effectively reached the jury at Tunnell's criminal trial.

Given the opportunity to respond to a movant's affidavits, an adverse party may not rest upon a mere cryptic and conclusory allegation in his pleading, but must set forth specific facts showing that there is a genuinely disputed factual issue for trial. Where this opportunity to supplement the record is ignored, summary judgment for the movant who has carried his burden of proof is appropriate. *See* First National Bank v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Tripoli Co., Inc. v. Wella Corp., 425 F.2d 932 (3d Cir. 1970); Doff v. Brunswick Corp., 372 F.2d 801 (9th Cir. 1966); Anthony v. White, 376 F.Supp. 567 (D.Del.1974) (§ 1983 context); 10 Wright & Miller, Federal Practice and Procedure: Civil § 2739 (1973). To oppose Sprague's motion successfully, Tunnell had the obligation to show, by affidavit or other sworn testimony, those material facts which he claimed were in dispute and which he alleged denied him the right to a fair trial. His failure to do so fully justified the district court's grant of summary judgment.

## V.

Although not required to do so in light of our disposition of Tunnell's claim (and, hence, this appeal),[9] we nevertheless believe that brief mention should be made of Tunnell's primary argument.

Tunnell contends that the publication of Sprague's comments so significantly increased the "probability that prejudice would result" as to warrant a *presumption of prejudice* and the conclusion that his criminal trial was, therefore, "inherently lacking in due process." (*See* Appellant's Brief at 8). In support of this argument, Tunnell relies on a series of pre-trial publicity cases of which the following are illustrative: *See e. g.,* Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14

---

**8.** As noted, *supra,* Tunnell filed his complaint containing this allegation four (4) months *before* the commencement of his criminal trial and approximately nine (9) months *after* the publication of Sprague's allegedly prejudicial statements.

**9.** Because of our disposition of Tunnell's appeal on the analyses set forth in III and IV, *supra,* we need not reach, discuss, or decide the issue of prosecutorial immunity.

L.Ed.2d 543 (1965); Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); United States ex rel. Doggett v. Yeager, 472 F.2d 229 (3d Cir. 1973); *but see* United States v. D'Andrea, 495 F.2d 1170 (3d Cir. 1974).

The short answer to Tunnell's argument is that he has overlooked the highly significant fact that the jury in his criminal trial (as evidenced by an absence of juror challenges) had never been exposed to the allegedly prejudicial statements. Here, whatever "presumption of prejudice" may have existed was effectively "rebutted" by the affidavit submitted by Sprague, showing the interrogation of the jurors in regard to the allegedly prejudicial article but an absence of challenges on that basis.

We know of no case or instance where, after a showing that jury members were not exposed to the allegedly prejudicial publication, they (the jurors) were, nonetheless, presumed to be prejudiced. Certainly the cases cited by Tunnell do not stand for that proposition.[10] Nor can this one.

The January 2, 1974 order of the district court will be affirmed.

BIGGS, Senior Circuit Judge, dissents.

---

**10.** We note that all of the "presumed prejudice" cases, cited *supra,* arose either on direct appeal from a criminal conviction or on habeas corpus. In the present case, by contrast, Tunnell is seeking damages under § 1983.